FILED

UNITED STATES DISTRICT COURT   2017 AUG 11  PM 3: 19
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANNETTE GILBERT,

    Plaintiff,

                       CASE NO.: 6:17-cv-1476-ORL-40DCI

-VS-

SUNTRUST BANK,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Annette Gilbert, by and through the undersigned counsel, and sues Defendant, SUNTRUST BANK, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like SunTrust Bank from invading American citizen's privacy and prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to

rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.    According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.    This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6.    Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7.    Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of

47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8.      The alleged violations described herein occurred in Seminole County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9.      Plaintiff is a natural person, and citizen of the State of Florida, residing in Seminole County, Florida

10.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11.     Plaintiff is an "alleged debtor."

12.     Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13.     Defendant, SunTrust Bank (hereinafter "SunTrust"), is a corporation with its principal place of business located at 303 Peachtree Street NE-STE 3600, Atlanta, GA 30308 and which conducts business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays St., Tallahassee, FL 32301.

14.     The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15.     SunTrust is a "creditor" as defined in Florida Statute §559.55(5)

16.     SunTrust called Plaintiff on Plaintiff's cellular telephone approximately one hundred (100) times in an attempt to collect a debt.

17.     SUNTRUST BANK attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

18.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line from SunTrust.

19.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (321) ***-6364, and was the called party and recipient of Defendant's calls.

20.     SunTrust placed an exorbitant number of automated calls to Plaintiff's cellular telephone (321) ***-6364 in an attempt to collect on a credit card debt.

21.     On several occasions over the last four (4) years Plaintiff instructed SunTrust's agent(s) to stop calling her cellular telephone.

22.     On or about April 2017, Plaintiff answered an automated call to her cellular telephone from SunTrust and spoke to an unknown agent. Plaintiff informed SunTrust's agent that she would appreciate if SunTrust would stop calling her cellular telephone as she currently does not have a job or the money to pay SunTrust.

23.    As of April 2017, Plaintiff unequivocally revoked any and all express permission SunTrust might have thought it possessed, to place automated calls to Plaintiff's cellular telephone.

24.    On or about June 3rd, 2017, Plaintiff answered another automated call to her cellular telephone from SunTrust and spoke to another unknown agent. Plaintiff again informed SunTrust that she would appreciate it if SunTrust would stop calling her cellular telephone and that she currently was unemployed with no money to pay SunTrust.

25.    On or about the week of June 5th, 2017, Plaintiff answered another automated call to her cellular telephone from SunTrust and spoke to another unknown agent. Plaintiff again reiterated her previous requests for SunTrust to stop calling her cellular telephone.

26.    On many occasions when Plaintiff would speak to SunTrust's agents, after requesting a cessation of calls, said agents would respond that while they were sorry to hear about Plaintiff's situation, they needed to keep her informed as to the matter at hand. SunTrust's agents never offered, or suggested, that they would cease calling Plaintiff as per her wishes.

27.    Due to the tremendous amount of automated calls Plaintiff received from Defendant, as well as the length of time in which she was receiving said automated calls, Plaintiff was unable to properly document each and every automated call she received from Defendant, however attached hereto as **Exhibit "A"** is a small sampling of some of the automated calls Plaintiff received to her cellular telephone from SunTrust.

28.     SunTrust has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

29.     SunTrust has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or SunTrust, to remove the number.

30.     SunTrust's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to SunTrust they wish for the calls to stop.

31.     SunTrust has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

32.     SunTrust has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

33.     SunTrust has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

34.     SunTrust's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

35.     SunTrust has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

36.     Not a single call placed by SunTrust to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

37.    SunTrust willfully and/or knowingly violated the TCPA with respect to Plaintiff.

38.    From each and every call placed without consent by SunTrust to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

39.    From each and every call without express consent placed by SunTrust to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from SunTrust's calls.

40.    From each and every call placed without express consent by SunTrust to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

41.    Each and every call placed without express consent by SunTrust to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also

impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

42.    Each and every call placed without express consent by SunTrust to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

43.    Each and every call placed without express consent by SunTrust to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

44.    Each and every call placed without express consent by SunTrust to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

45.    As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by difficulty sleeping, anxiety, and high blood pressure.

## COUNT I
### (Violation of the TCPA)

46.    Plaintiff fully incorporates and realleges paragraphs one (1) through forty-five (45) as if fully set forth herein.

47.    SunTrust willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified SunTrust that she wished for the calls to stop.

48.    SunTrust repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial

8

voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SunTrust for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

<u>COUNT II</u>
**(Violation of the FCCPA)**

49.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty-five (45) as if fully set forth herein

50.     At all times relevant to this action SunTrust is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

51.     SunTrust has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

52.     SunTrust has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

53.     SunTrust actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SunTrust for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and

any other such relief the court may deem just and proper.

Respectfully submitted,

Octavio 'Tav' Gomez, Esquire
Morgan & Morgan, Tampa,  P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:  (813) 223-5402
TGomez@ForThePeople.com
Florida Bar #:  0338620
Attorney for Plaintiff